## M. PERRINE ET AL. v. M. DINAN ET AL.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY.

Argued March 13, 1890—Decided March 24, 1890.

On the trial of an issue in the attachment of a debt due on a purchase money mortgage, held in the name of a wife but attached for the debt of her husband, the trial court having fairly submitted to the jury the question whether the wife had a separate estate, and whether the property in controversy was acquired by means of and upon the credit of it, the verdict of the jury settled in her favor the question of fact, and, no error of law appearing, the judgment in favor of the garnishee was not error.

Statement of Facts.

Before Paxson, C. J., Sterrett, Green, Clark and Williams, JJ.

No. 236 January Term 1890, Sup. Ct.; court below, No. 5 October Term 1888, C. P.

On August 3, 1888, Matthew Perrine and Jonathan S. Perrine, trading as M. & J. S. Perrine, upon a judgment for $229.21, obtained the same month against Michael Dinan, issued an attachment-execution with clause of scire facias to George Zboyousky as garnishee. The garnishee pleaded, nulla bona.

At the trial of the issue against the garnishee, on December 2, 1889, the facts shown were in substance as follows:

By deeds dated May 26, 1884, and July 10, 1884, James Henry conveyed to Catharine Dinan two adjoining lots in South Bethlehem. One lot was conveyed for a consideration of $650, of which the grantor received by the hands of Michael Dinan $150 in cash, and a bond and mortgage executed by Michael and Catharine Dinan for $500. The other lot was conveyed for a consideration of $350, for the whole of which Michael and Catharine Dinan executed their mortgage to the grantor. In the fall of 1885, a building was erected upon these lots costing about $4,000. On March 27, 1888, the property with the building thus erected was conveyed to George Zboyousky, the garnishee, for $9,000, of which $5,000 was paid in cash, and the balance, $4,000, secured by the bond and mortgage of the grantee to Catharine Dinan of even date with the deed.

The plaintiffs, adducing testimony to the effect that at the time of the conveyance of the lots to Mrs. Dinan and before the erection of the building thereon, there were unsatisfied judgments against Michael Dinan aggregating about $4,000, and that he was insolvent, claimed that the indebtedness represented by the garnishee's mortgage was in fact due to Michael Dinan and subject to their attachment.

The defendants adduced testimony from which it was claimed that Mrs. Dinan had a separate estate of her own, with which her cash payments for the lots were made when they were conveyed to her; that in April, 1885, she borrowed $1,500 on a mortgage to a Mrs. Weaver, with which she paid off the Henry mortgages, using the balance afterward in the erection of the building; that she owned 10 shares in a building and loan as-

Charge of Court below.

sociation, upon which she borrowed $2,000, which also she used in the erection of the building; and that the indebtedness of Michael Dinan to the plaintiffs, upon which they obtained their judgment, was contracted during the year 1888.

At the close of the testimony, the court, REEDER, J., after reviewing the testimony briefly, charged the jury, in part as follows:

[Mrs. Catharine Dinan and Michael Dinan both swear that the first lot was bought for $150, and that it was paid for with her own money; money that she had acquired previous to her marriage, by gift from her parents. Is this true? If it is true, then, of course she had a right to make the purchase in this way and acquire the title to this lot, and the title was properly given to her, and it is not in the power of any jury or of any court to disturb that title, provided she has done nothing since that which will affect it.] [12]

After she had purchased the first lot, the second and adjoining lot was bought. The testimony of the defendant is that upon the second purchase no consideration in money was paid, but that a mortgage was given. [Was this second purchase made solely upon the credit of the separate estate of Catharine Dinan? If it was, then her title to it would be just as good as if she had paid the purchase money down for it, in cash, out of her own separate funds, at the time of the purchase.] [13]

[Subsequent to the purchase, a house was built upon the lot. Mrs. Dinan claims, and both she and Michael Dinan testify, that the money for the building was raised by a mortgage upon the property, the property having advanced in value, and from the earnings of Michael Dinan's children, given to Mrs. Dinan by them for the purchase of this property.] [14] Is this true? If it is true, and those children who were over twenty-one years of age took their earnings to their mother and gave them to her for the purpose of paying the balance due upon this property, or for the purpose of erecting a building upon the property, then the title of Mrs. Dinan cannot be disturbed, because they had a perfect right to do with their earnings as they chose after they were twenty-one years of age; [and if they chose to give their earnings to their mother for the purpose of paying off the debt upon this property, so as to divest it of all

liens, and to give the property to her clear of encumbrances, that is a thing they had a right to do.] [15] . . . . .

If you find, therefore, that this lot was purchased and the building erected on it out of the separate estate of Mrs. Dinan, then, no matter whether this debt existed prior to the time of the erection of the building or not, the title of Mrs. Dinan to this property was a good title, and your verdict will be for the defendant. If you believe, however, that this is not the case, and that the lot was not purchased upon the credit of the separate estate of Mrs. Dinan, then you will proceed to the consideration of another question: Did this claim, for which Perrine & Co. obtained judgment against Michael Dinan, exist as a credit prior to the time that the lot was acquired and the building erected by Mrs. Dinan ? [ Because, if Michael Dinan put his own money into that property, and the property was acquired by Mrs. Dinan because of Michael Dinan's purchase of the property and his gift to her either of the property or the money with which to purchase the property and erect the building, it is a good title in Mrs. Dinan, unless it was done for the purpose of defrauding creditors ;] [16] that is to say, gentlemen, either one of you would have a perfect right to give any property which you possess to your wife, and she would take a good title as against all the world, except as against existing creditors, or unless it were done for the purpose of defrauding future creditors. As long as the gift to the wife is made in good faith, no one, except a creditor whose claim is in existence at the time, can call the gift in question. A man has a perfect right to buy property and give it to his wife, and she takes a good title to the property; and the creditor whose claim is created subsequent to the gift cannot successfully question or disturb the title of the wife, unless he proves that the gift to the wife was for the very purpose of defrauding creditors.

[If you believe that there was no purpose to defraud creditors here, and yet you believe that the money of Michael Dinan, and not the money of Mrs. Dinan, bought this property, and that Michael Dinan's money built the house upon this land, and you believe also that this purchase was made and the house erected on the lots prior to the creation of this claim now in suit here, nevertheless your verdict would be for the

· Charge of Court below.

defendant, unless you believe that the title was given to Mrs. Dinan for the purpose of defrauding future creditors.] [17] No man has a right, because he contemplates incurring indebtedness in the immediate future, to pass all his property out of his hands into those of his wife and strip himself of all ability to pay debts about to be contracted. That would be a void transaction. But, unless I contemplate some such fraud as that, I have a perfect right to give all my property to my wife and children, and nobody can successfully question it unless they prove that such fraud is contemplated, except in the case of an existing creditor at the time of the transfer. [Even though you may believe that Michael Dinan's money paid for this property, and that his money went into the erection of this building, and that he gave the title to his wife as a gift to her, nevertheless it is a good title in her as against any future creditors, unless the transfer to Mrs. Dinan was not made in good faith, but was made to her for the very purpose of defeating future creditors.] [18] . . . . .

Even though Mrs. Dinan may have acquired the property in good faith on the credit of her separate estate, or paid for it out of her separate estate in the first instance, and although subsequently Michael Dinan may have contributed money to the erection of the building, he had a perfect right to do so, and it vested a good title in her as against all the world unless called in question by creditors whose claims were in existence at the time he contributed the money, or unless it was done for the purpose of defrauding future creditors. [So, if you find that Mrs. Dinan owned this lot herself, and that Mrs. Dinan contributed the greater part of the money towards the erection of this building, and you should find that Michael Dinan contributed some of the money, and you must find that from the testimony, nevertheless it would be a good title in her, and the plaintiffs would not have a right to recover, unless you believe from the testimony that at the time he contributed that money toward the purchase of the lot or toward the erection of the building, this claim of Perrine & Co. was a living, existing indebtedness, or unless you believe that the money was put in the property for the purpose of defeating future creditors for contemplated indebtedness.] [19] . . . . .

[If you believe that this property was bought by Mrs.

Opinion of the Court.

Dinan, not out of her separate estate, but that it was paid for with the money of Michael Dinan, then you will determine whether this claim of Perrine & Co. was an existing claim at that time, and if it was, then the plaintiffs are entitled to recover out of that property the amount of their claim. If the claim was created afterwards, then you will determine whether the title was given to Mrs. Dinan by Michael Dinan for the purpose of defrauding future creditors. If it was, then also the plaintiffs are entitled to recover the amount of their judgment out of the money owing by the defendant upon this mortgage.] [20]

The jury returned a verdict in favor of the garnishee. A rule for a new trial having been discharged, judgment was entered on the verdict, when the plaintiffs took this appeal, assigning for error inter alia:

12–20. The portions of the charge embraced in [ ] [12 to 20]

*Mr. A. Brown Longaker* (with him *Mr. T. F. Emmens*), for the appellants.

Counsel cited, as to the presumption that the property attached was the husband's: Bradford's App., 29 Pa. 513; Topley v. Topley, 31 Pa. 328; Pier v. Siegel, 107 Pa. 507; Lochman v. Brobst, 102 Pa. 483; McFall v. Ice Co., 123 Pa. 257. As to the insufficiency of the evidence on the part of the defendant: Gault v. Saffin, 44 Pa. 307; Aurand v. Schaffer, 43 Pa. 363; Leinbach v. Templin, 105 Pa. 526; Lochman v. Brobst, 102 Pa. 481; Sober v. Standart, 110 Pa. 47.

*Mr. J. Davis Brodhead,* for the appellee, was not heard.

In the brief filed, counsel cited: Goff v. Nuttall, 44 Pa. 78; Lochman v. Brobst, 102 Pa. 485; Seeds v. Kahler, 76 Pa. 262; Pier v. Siegel, 107 Pa. 507; Thompson v. Allen, 103 Pa. 44; Shuster v. Kaiser, 111 Pa. 215; Earnest's App., 106 Pa. 310; Welch v. Kline, 57 Pa. 432; Earl v. Champion, 65 Pa. 194; Rush v. Vought, 55 Pa. 437.

PER CURIAM:

The court below left the question of fact fairly to the jury, whether Catharine Dinan, wife of Michael Dinan, had a sep-

arate estate, and whether the property in controversy was acquired by means of, and upon the credit of that separate estate. The verdict of the jury settles the question of fact in her favor, and as no error of law appears the judgment must stand.

Judgment affirmed.